Mr Patton. Thank you, Your Honor. I'm Tom Patton, and I represent the appellant Jacques Gholston. The traffic stop of Mr Gholston was unlawfully prolonged for longer than it was necessary to write a ticket for turning out a signal. And it was extended because the officer engaged almost immediately into an investigation of methamphetamine distribution. But there was not reasonable suspicion to believe that Mr Gholston was involved in distributing methamphetamine. Therefore, the extension of the stop violated the Fourth Amendment. The search, the dog sniff, was unconstitutional, and therefore the evidence found in Mr Gholston's truck should have been found that while the stop may have been extended, he didn't have to decide if it was reasonable or unreasonable because any extension was de minimis. And that's just contrary to the Supreme Court's decision in Rodriguez. The Supreme Court specifically held that there is no de minimis exception. And the two, uh, Seventh Circuit cases that the District Court relied on, Sanford and Garrett, for the overall reasonableness of a stop, don't even apply because in both cases, this court found that there was either reasonable suspicion to believe there was a drug involvement, or in Garrett, they found there was probable cause based on controlled purchases. So the courts in Sanford and Garrett never even had to deal with the issue of whether or not the stop was unlawfully prolonged because they found that there was probable cause of reasonable suspicion. So Mr. Patton, let me ask you a question. In assessing whether this stop was unreasonably prolonged, and I will assume for the sake of argument right now that reasonable suspicion is not a good way to go in this, but there are three moving pieces. There's the original ticket for the signal violation. There is the insurance card problem that we have a finding of fact arose in an innocent fashion. Nobody was manipulating and trying to extend things with the insurance card. And the third is this notice of violation service. So we have all three these factors contributing to the length of the stop. And I realize that Cowick is on the, you know, he's texting and he's using the same keyboard telling Elvis, you know, walk it slowly over here, you know, don't rush. And at the same time, he's texting with Sahlborn saying, zip over here with the dog as quickly as you can. But I just wonder, well, we almost have to get down to seconds because Elvis does get there close to the same time as Sahlborn does with the dog. And it probably takes a minute or two, maybe a minute or so to give the person the notice of violation even. And I wonder how many seconds are we down to of extension of time? And is there some outer limit or is anything too much? Well, Your Honor, I think the largest single extension of time is when Cowick, after hearing back from the dispatcher that Mr. Golston had a valid driver's license, which Cowick then testified specifically that that gave him the information he needed to start writing the ticket for turning without signal. But instead of then starting to actually write the ticket, what Cowick decided to do was to ask Mr. Golston for consent to search his person. Because remember, Cowick had already patted him down for weapons. But there's nothing wrong with the consent to search his person, is there? I mean, police officers can't ask? They can ask in general, Your Honor, but not at the expense of starting to write the traffic ticket when they have all the information they need to start writing the traffic ticket. For example, if Cowick would have gone in and started writing the ticket but said to Hodges, hey, you know, I got to get busy on the ticket. You ask Golston, see if you can get consent to search. And if Hodges did that and Mr. Golston consented, then that's perfectly all right. But what they can't do is wait to start writing the ticket. So that they can then try and do a consent search that was clearly had nothing to do with writing a ticket for failing to signal a turn. It was based solely on trying to, you know, find evidence of methamphetamine distribution and trying to get Mr. Golston to agree to give consent to search his truck. So I think... Did Officer Cowick say that about the purpose? I mean, this is the middle of the night. It's half past midnight in a rough part of town. And you think the initial pat down eliminates any further possibility of officer safety or the like for the personal search? I don't mean the car. That's a different thing. Yeah, no, absolutely. Because what Cowick did was, and we didn't challenge the initial pat down. We said that was fine under Terry standards for doing the stop. And Cowick literally has Mr. Golston handcuffed with his hands behind his back, which Golston didn't fight, didn't try and fight that at all. Then Cowick does the pat down search, walks Mr. Golston over and sits him down on the curb. And then two more officers arrive on the scene. So it's not Cowick there by himself. And Cowick has Sir and Sonny sit and watch Golston while Cowick and Hodges step aside. And Cowick is immediately talking about, hey, I think he's got meth. I think he's got meth. How do we do this? Now Hodges is like, well, if he walked away, try and do obstruction. Cowick says, no, I can't do that because he's already walking away from the truck when I turned my ever be justified as officer safety after he's already been handcuffed, patted down, and you have multiple officers. And so... Adam, can I ask you on the reasonable suspicion question? If Golston is walking away from a traffic stop, makes eye contact, I assume that he and Officer Cowick are the only ones around at night in this tough part of town. Doesn't that add something to the reasonable suspicion? Your Honor, I would say that it can add something initially. I understand the point, but I do think a couple of things are important about this and that by Cowick's own admission, and you can see it on the video, Mr. Golston is out of the truck walking away before Cowick turns on his emergency lights. And Mr. Golston isn't supposed to automatically know the second the lights come on that he is the subject of the police officer. But yes, when Cowick gets out, our jail and makes eye contact. I get that Cowick can be a little bit suspicious, but what Cowick said was Golston never tried to flee. As soon as Golston recognized he's the person Cowick's And you can see this on the video, Your Honor. He tells Golston, come here. And Mr. Golston walks back to him. Cowick says, go to the truck. Golston starts walking to the truck. Cowick says, no, you know what? I've changed my mind. Come here, I'm going to cuff you. Mr. Golston walks up to Cowick, turns around and allows himself to be cuffed. So while yes, the fact that there was a little bit of back and forth before Mr. Golston stopped walking could be somewhat suspicious. Once Mr. Golston walks back completely, you know, consents to everything Cowick's doing. I think that any suspicion that was aroused based on those facts evaporated and could not give any reasonable support to the reasonable suspicion that Mr. Golston was distributing methamphetamine. If I could, I'd like to reserve the remainder of my time. Certainly, Mr. Patton. Mr. Weir. Yes. May it please the court. Matthew Weir, appearing on behalf of the United States. In this case, Officer Cowick did not unreasonably extend the traffic stop before the canine alert, which then provided a probable cause for the search of the vehicle. However, in the alternative... Here's my concern, Mr. Weir. It seems that Cowick... You don't usually see a record as clear as this, that Cowick is manipulating the process to make sure that the dog gets there first so that the dog can then do a quick sniff as he suspected. Of course, if the dog hadn't alerted, we wouldn't even be here. But the dog, of course, does alert. So he can't be working on the ticket at the same time he's sending all these texts, because it's just a physical impossibility. He's not like he's dictating some voice to memo thing or something. He's texting other officers. He's telling Officer Elbis with this notice of violation, and I'll assume for the sake of argument that that's not some pretext. I guess there's a lot of testimony that that's what they did in Quincy. But he's saying, take your time, be slow. He gets confirmation basically from Elbis that he gets the message. And then he's begging the other guy, Salborn, to speed it up. This looks like a manipulated, overly long stop that leads to the dog alerting. I would respectfully disagree, Your Honor. The record in this case, Mr. Officer Cowick offered testimony as to the meaning of that text to Sergeant Elbis, stating that he was telling Sergeant Elbis not to kill himself, not to put on the lights, to rush the ticket over because he was expecting to do a dog sniff of this vehicle because the canine was on the way. Doesn't he say, take your time, because he was trying to get Sam 12 here? He does, Your Honor. Just the dog officer. Correct. So take your time, let's make sure the dog gets here first. Correct, Your Honor. However, again, in the context of his testimony, Sergeant Cowick explained that what he was explaining to Sergeant Elbis was, you do not need to rush as far as throwing your lights on, speeding over here, blowing through stop signs, things like that, because we are waiting on the dog. And in his mind, Officer Cowick says, I believe subjectively that he did want to get the dog to the scene to conduct a sniff. However, Your Honor, it's an objective standard. So the officer's motivation in saying that does not necessarily go into the objective overall view of whether the traffic stop was in its entirety. No, I agree with that. Objectively, if you're telling Officer A to delay and you're telling Officer B to speed up, there is a predictable consequence, right? That Officer B will get there first. That's correct, Your Honor. You can't defy the laws of physics that far. I agree, Your Honor. I believe Sergeant Elbis also testified that he did not change the way that he served the NLV in any way based on those messages from Officer Cowick. And the overall length of the stop was not lengthened. The effect of those messages was that the dog got there first. However, that does not mean that Officer Cowick unreasonably extended the stop. Officer Cowick testified in the court credited that he was working on the ticket the entire time he was in the vehicle. But that's impossible because he was sending texts. He wasn't working on the ticket the whole time. Well, Your Honor, I would disagree respectfully again that it's impossible. He was also calling in the registration for the vehicle. He also had to get out of the vehicle and ask Mr. Golson a question. Even if he did need to switch back and forth between keyboards to send some of the texts, you're talking about a matter of seconds to send a forward message to Sergeant Elbis before he would switch back and begin filling in any of that information. This would be quite contrary to our decision in Lopez and other guidance from the Supreme Court. Do you think that there's a two just delay or is there any tolerance here? No, no, certainly not, Your Honor. It can obviously be unreasonably extended. In this case, however, it is the government's position that there was no unreasonable extension that Officer Cowick was able to multitask and to work on the ticket, to call in a dispatch, to wait on dispatch to return calls, and to switch back and forth without any unreasonable or unnecessary delay. A delay of a matter of seconds to communicate with officers about another issue regarding the traffic stop is certainly not unreasonable given the case law in the Seventh Circuit of similar situations where, for example, asking unrelated questions or, as the court previously pointed out, asking for permission to search, those are certainly not unreasonable delays. Those are just parts of investigations that arise out of traffic stops. Why do you need to do a full search of somebody who didn't put his signal on? I don't believe that you... After the Terry pat-down, of course, the Terry pat-down. I don't know that you need to, Your Honor, but it is certainly allowed per the case law. The Supreme Court specifically has found that asking a number of unrelated questions and a request for a search was not an unreasonable extension. And certainly in this case, there is some extra need for the search because of the specific facts of this case, Your Honor, which have already been gone over. That is that Mr. Golston did try to walk away from the stop, did try to distance himself from the vehicle, at least in the officer's eyes in this case. And... On that point, Mr. Weir, could you... Do you agree that he was out of his car by the time the blue and red lights went on? No, Your Honor, I do not. And I do not believe that was the when the lights came on, and it was when he turned onto the street that Mr. Golston was on. I do agree that by the time he came to a rest behind Mr. Golston's vehicle with his lights on, Mr. Golston was getting out of the vehicle. Okay. And so how significant is any of that conduct on the score of reasonable suspicion? On the reasonable... On the reasonable suspicion, Your Honor, it is an important factor out of all of the factors in this case of which there were several others. But it is obviously an important factor to Officer Kowik in this situation. And that is based on the area of the stop, the time of the stop. It's early in the morning. It's in a high drug, high crime area. He's the only vehicle on the street. He did continue to walk away after Officer Kowik made contact with him, Your Honor. Officer Kowik was also aware of Mr. Golston's history of selling methamphetamine. And he also had, through some routine police work, information from unidentified sources that he said were drug users and also a known source. Can you give that any weight at all, the rumors on the street? I believe you can, Your Honor. They're not rumors on the street. Exactly. They're routine follow-up from multiple drug users. They were rumors. There were no names, no people. People say, you know... Correct. Correct, Your Honor. But again, this is not in the context of that being the sole information underlying the stop. And the analysis in Mr. Patton's brief applies that specifically did believe Officer Kowik's testimony about the information he had previously received. You can believe it, but it's an objective test, as you reminded us. Correct, Your Honor. We're going to start allowing police officers to detain people based on street rumors from unidentified folks of unknown credibility. We've got a different Fourth Amendment that I'm familiar with. Not at all, Your Honor. And that's not what the government's arguing. The government's arguing it's one of the five or six factors that contributed to the reasonable or takeable suspicion in this case. The government does not suggest that this information on its own would have been sufficient to stop Mr. Golston, absent any other reasons. However, that is also not the case. That was not the only information that the officers had that contributed to reasonable or takeable suspicion. And Your Honor, I see that my time is almost up. If I may just have a few extra seconds to just conclude. Mr. Patton. I'm sorry. Thank you, Mr. Weir. Mr. Patton, anything further? Mr. Your Honor, I would just say on the issue of diligence, what the Supreme Court said in Rodriguez is, quote, how could diligence be gauged other than by noting what the officer actually did and how he did it? And when you look at what Kowik actually did and the way he did it, there is no doubt he extended this stop. And as this court said in Lopez, it's not a matter of, you know, is it one minute, two minutes? It's not a stopwatch test. And you look at what he did. You know, Mr. Weir didn't give any information about why the second search of Mr. Golston furthered the traffic stop. It didn't. And Kowik specifically testified, because I asked him, and it's in the transcript. I believe it's pages 82 through 85. You know, I asked him, you're not looking for evidence of turning without a signal while you're searching him. And he admitted, well, no, he wasn't. He was getting, trying to get evidence of meth distribution. And then all of the back and forth about trying to get Elvis to slow down and Salbern to hurry up. It's as clear a case as extending a stop as the court's likely to see. Thank you. Thank you, Mr. Patton. The case is taken under advisory.